Insurance Commissioner
**ACCEPTED SOP**
SEP 26 2022
TIME: 2pm

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF KING

| | |
|---|---|
| TRIBRACH CAPITAL, LLC, a Washington limited liability company, as assignee of BARCELO HOMES, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, a Delaware corporation,<br><br>Defendant. | Case No.<br><br>COMPLAINT |

Plaintiff Tribrach Capital, LLC alleges as follows:

**Parties**

1. Tribrach Capital LLC ("Tribrach") is a limited liability company formed under the laws of the State of Washington, and with its principal place of business there. Christopher Chen and his wife, Tianshu Sun are members of Tribrach. Tribrach is the assignee of all rights that Barcelo Homes, Inc. ("Barcelo"), has against Defendant. Barcelo is and at all relevant times has been a Washington corporation doing business within King County, Washington.

COMPLAINT - 1

576650-0002/4865-8839-8899.5

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

2. Defendant Endurance American Specialty Insurance Company ("Endurance") is an insurance company incorporated under the laws of the State of Delaware. It sells insurance to customers in the State of Washington, is affiliated with other insurance companies that are admitted to sell insurance in the State of Washington, and sold the insurance policies at issue to a Washington corporation to insure risks located in Washington State.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction over this action under RCW 2.08.010.

4. Venue is proper in King County, Washington pursuant to RCW 4.12.025 because Tribrach's claims arise in part or in whole out of conduct that occurred in this county.

**Operative Facts**

I. **Tribrach sues Barcelo Homes, Inc. for construction defects and property damage resulting from Barcelo's performance of a contract to build a home for Tribrach's members, Chen and Sun.**

5. In 2016, Chen purchased property in Clyde Hill, Washington, intending to build a dream home for Chen and Sun. Chen then assigned the property to Tribrach.

6. Chen had purchased the property from an affiliate of Barcelo Homes, Inc. In 2017, Tribrach contracted with Barcelo to build a home on the property as well as a garage.

7. Between 2017 and 2019, Barcelo performed construction work on the property. Tribrach became dissatisfied with the conduct and progress of work by Barcelo and its subcontractors.

COMPLAINT - 2

576650-0002/4865-8839-8899.5

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

8. Due to disputes regarding the amount of payment Barcelo deemed it was owed, Barcelo refused to perform further work on the project, abandoning it on date which is factually disputed.

9. In response to Barcelo's abandonment of work on the Project and other performance issues, Tribrach initiated the formal termination of Barcelo in May, 2019 and, simultaneously, barred Barcelo and its subcontractors from entering the property.

10. After barring Barcelo from the property, Tribrach engaged experts to evaluate the progress and quality of Barcelo's work. This led to the discovery of many instances of improper construction as well as outright property damage. Tribrach then formally terminated its contract with Barcelo.

11. On July 26, 2019, Tribrach filed suit against Barcelo to recover damages for, among other things, significant property damage caused by the actions of Barcelo and its subcontractors.

12. In its lawsuit against Barcelo, Tribrach alleged and documented roughly $2.2 million in compensable damages.

**II. Barcelo tenders the defense of the Tribrach complaint to Endurance, who then unreasonably refuses to defend Barcelo.**

13. Barcelo had purchased two commercial general liability insurance policies from Endurance (the "Policies"). The first, with a policy number of CBF10000128800, was in effect between January 12, 2017 and January 12, 2018. The second, with a policy number of CBF10000208800, was in effect between January 12, 2018 and January 12, 2019. These Policies were in effect when Barcelo performed construction work under its contract with Tribrach.

14. Among other things, the Policies covered all sums that Barcelo was obligated to pay as damages because damage to the property of third parties such as

COMPLAINT - 3

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

Tribrach. The Policies also required Endurance to defend Barcelo against any lawsuits commenced by complaints that alleged claims that might conceivably be covered.

15. On August 12, 2019, just over two weeks after Tribrach sued it, Barcelo tendered the defense of the Tribrach lawsuit to Endurance. Upon information and belief, Endurance turned over responsibility for responding to the tender and handling Barcelo's claim for coverage to an Endurance affiliate, which Endurance identified as "Sompo International Insurance Companies."

16. On September 25, 2019, Endurance issued a letter in which it denied coverage and refused to defend Barcelo.

17. Endurance justified its refusal on several grounds, none reasonable, as follows.

18. First, Endurance relied upon a contractual liability exclusion in the Policies, contending that the exclusion applied to Tribrach's claim for breach of contract. But that is not the law, and in other cases, Endurance has admitted that the exclusion does *not* apply to mere breaches of contract. Rather, it is limited to contractual provisions in which a policyholder agrees to indemnify a third party's losses or liabilities. Hence, this exclusion did not rule out the possibility of coverage under the Policies, and did not justify Endurance's refusal to defend Barcelo.

19. Second, Endurance claimed that the Tribrach did not allege an "occurrence." Yet the only case Endurance cited for this claim did not support it. Meanwhile, Endurance impermissibly applied its own definition of "occurrence," one that favored it rather than Barcelo, and one contradicted by Washington case law. Hence, the Policies' definition of "occurrence" did not rule out the possibility of coverage under the Policies, and did not justify Endurance's refusal to defend Barcelo.

COMPLAINT - 4

576650-0002/4865-8839-8899.5

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

20. Third, Endurance claimed that because one of Tribrach's claims involved Barcelo's repossession of a door on the property, Endurance was excused from defending the entirety of Tribrach's complaint. But Washington law did not permit Endurance to evade its duty to defend a lawsuit simply because some part of it was (allegedly) not covered. Moreover, in announcing that the repossession of the door was not covered, Endurance concluded that because the decision to take the door was intentional, Barcelo necessarily intended to harm Tribrach. But this disregarded the distinction, well recognized in Washington, between intentional acts and intentional harm. Hence, allegations that Barcelo wrongfully repossessed a door did not rule out the possibility of coverage under the Policies, and did not justify Endurance's refusal to defend Barcelo.

21. Fourth, Endurance claimed that the Policies' exclusion j(5) applied because the property damage took place where Barcelo was "performing operations." Yet nothing in the Tribrach complaint alleged that the property damage at issue all took place while Barcelo was actively conducting operations on the property, as is required to trigger exclusion j(5). Further, the Tribrach complaint was ambiguous as to whether certain work—such as the construction of the garage—was completed and put to its intended use and, therefore, that alleged property damage was to property on which Barcelo was not performing operations during the Kinsale policy periods. Properly construed in favor of coverage, the Tribrach complaint alleged property damage that conceivably fell outside exclusion j(5). Hence, this exclusion did not rule out the possibility of coverage under the Policies, and did not justify Endurance's refusal to defend Barcelo.

22. Fifth, Endurance claimed that the Policies' exclusion j(6) applied because the property damage alleged in the Tribrach complaint was due to "your work" (i.e., Barcelo's work) being incorrectly performed "on that particular part of

COMPLAINT - 5

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

property" in need restoration, repair, or replacement. But the exclusion does not apply to work that falls within the Policies' "products-completed operations hazard," or "PCOH" for short. Endurance insisted that Barcelo's work fell outside the PCOH because Barcelo's work was never "completed or abandoned." Endurance then suggested that while Barcelo did not complete the work, it abandoned the work, an inference supported by the Tribrach complaint. Accordingly, for purposes of Endurance's duty to defend, the Tribrach complaint must be construed to allege property damage that conceivably fell within the PCOH and, therefore, outside exclusion j(6). Likewise, the Complaint was ambiguous as to whether certain work was completed—such as the construction of the garage—and put to its intended use. Hence, this exclusion did not rule out the possibility of coverage under the Policies, and did not justify Endurance's refusal to defend Barcelo.

23. Sixth, Endurance relied on exclusion I, which applies to "your work." But this exclusion does not apply to work by Barcelo's subcontractors, and the Tribrach complaint does not rule out the possibility that the property damage at issue was caused by Barcelo's subcontractors. Hence, the Tribrach complaint alleged property damage that conceivably fell outside exclusion I, and exclusion I did not justify Endurance's refusal to defend Barcelo.

24. Seventh, Endurance cited the Policy's "impaired property" exclusion to justify its refusal to defend Barcelo, apparently based on the assumption that any delay damages Tribrach alleged somehow implicated this exclusion. But this is a non sequitur. Moreover, the Tribrach complaint alleged more than simply delay damages. Consequently, it alleged property damage that conceivably fell outside the impaired property exclusion and "impaired property" exclusion did not justify Endurance's refusal to defend Barcelo.

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

25. Finally, Endurance asserted the "professional services" exclusion as a basis for denying coverage and, apparently, refusing to defend Barcelo. In so doing, Endurance relied on extrinsic evidence that (Endurance claimed) suggested that Tribrach's dissatisfaction arose "in part" from Barcelo's violation of a building permit. But this assertion appears nowhere in the Tribrach complaint. Washington law prohibits an insurer from looking outside the four corners of a complaint for facts that might support refusing to defend the policyholder. Further, even if Tribrach had made this allegation in its complaint, by Endurance's own admission, Tribrach's concerns were attributable to the building permit only "in part." This did not foreclose the possibility that the rest of the complaint's allegations conceivably fell with the Policies' coverage. Hence, the professional services exclusion did not rule out the possibility of coverage under the Policies, and did not justify Endurance's refusal to defend Barcelo.

### III. After Endurance refuses to defend Barcelo, Barcelo is left to fend for itself in defending and trying to resolve the Tribrach lawsuit.

26. Once Endurance wrongfully refused to defend Barcelo, Barcelo was left to fend for itself, entirely unaided by Endurance. Barcelo pursued another insurance company, Kinsale Insurance Company, which helped fund a portion of its defense, but failed to meet its defense obligations under *Tank v. State Farm*.

27. For example, after 16 months of litigation, and with a trial date looming, Barcelo's appointed defense counsel had not conducted a single fact or expert deposition. Barcelo's counsel also simply did not respond to Tribrach's discovery requests. For example, Tribrach's Second Set of Interrogatories and Requests for Production, pending for more than a year, remained unanswered when the Tribrach lawsuit finally ended.

COMPLAINT - 7

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

28. As another example, Barcelo's counsel failed to name a damages expert until after a thrice-continued court deadline for naming additional witnesses had already passed, and less than a month before discovery cut-off.

29. Indeed, Barcelo's counsel did not submit a brief in advance of a mediation conference among the parties, a mediation which had been continued at least twice at the request of appointed defense counsel.

30. Tribrach is informed and believes and therefore alleges that Barcelo's financial strength declined significantly and its financial position became more and more precarious as result of the shoddy defense provided to it by Kinsale. Upon information and belief, things reached the point where Barcelo could no longer afford to pay the independent law firms it had engaged to supplement the defense of the Tribrach lawsuit and to compel Kinsale to provide Barcelo' the proper defense it was owed pursuant to *Tank v. State Farm*.

31. At no point did Endurance ever contribute a cent toward Barcelo's defense of the Tribrach lawsuit.

**IV.   Barcelo settles the Tribrach lawsuit, assigning its claims against Endurance to Tribrach.**

32. Eventually Barcelo, Kinsale, and Tribrach participated in a mediation conference. Serving as mediator was Dale Kingman of Gordon Thomas Tilden & Cordell. Representatives of Barcelo, Kinsale, and Tribrach participated along with several of Barcelo's subcontractors. Endurance did not.

33. Thanks to Endurance's breach of its duty to defend Barcelo, Barcelo entered mediation facing a credible, documented, and supported damages claim exceeding $2,000,000, even as it was woefully unprepared for a trial that was just months away.

34. Still, despite Endurance's failure to participate in the mediation conference, Barcelo and Tribrach were, with the mediator's assistance, able to negotiate a settlement, which was eventually embodied in a formal written agreement. This settlement effectively protected Barcelo from the consequences of a bet-the-company trial in which Barcelo held a losing hand.

35. As part of the settlement agreement between Barcelo and Tribrach, Barcelo stipulated to entry of a judgment against it in the amount of $1,075,000, less than half of Tribrach's total claimed damages.

36. In exchange, Tribrach covenanted not to enforce the judgment against any of Barcelo's assets other than specified insurance policies, including the Policies. The enforceability of the judgment was and is subject to a judicial determination that the settlement was reasonable.

37. Endurance has not contributed a cent toward either the settlement amount or toward any of Barcelo's obligations under that agreement.

**V.  In response to Tribrach's notice under the Insurance Fair Conduct Act, Endurance doubles down on its justifications for refusing to defend, and tries to deflect blame of its failure to defend on Barcelo.**

38. Pursuant to RCW 48.30.015(8), Tribrach sent notice to Endurance Tribrach's intent to assert a cause of action against Endurance under the Insurance Fair Conduct Act ("IFCA") on or about August 26, 2022.

39. Endurance failed to resolve Tribrach's claim within the 20-day statutory period.

40. As such, Tribrach has met its statutory obligations under IFCA.

41. Rather than resolve Tribrach's claim, Endurance repeated and doubled down on its previous justifications for refusing to defend Barcelo.

42. In addition, Endurance claimed that Tribrach and Barcelo were relying

COMPLAINT - 9

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

on extrinsic evidence to support their position that the Policies required Endurance to defend, and that they were withholding this evidence from Endurance. Endurance's claim was false. Neither Tribrach nor Barcelo claimed that consideration of extrinsic evidence was needed in order to determine that Endurance owed Barcelo a duty to defend the Tribrach lawsuit. Rather, Tribrach and Barcelo both relied exclusively on the allegations of the Tribrach complaint and on Washington's rules regarding the scope and determination of an insurer's duty to defend its insured. Endurance's refusal to abide by these rules, not some lack of extrinsic evidence, is what led to Endurance's wrongful refusal to defend.

## Causes of Action

### I. First cause of action: Breach of Contract

43. Tribrach realleges and incorporates by reference each and every preceding paragraph.

44. Endurance's conduct as described above constitutes an unreasonable breach of its insurance contract with Barcelo, including but not limited to its duty to defend and its duty to settle. As a result, Tribrach has been damaged in an amount to be proven at trial, but exceeding $1,075,000, and it is entitled to an award of such damages as well as the remedy of coverage by estoppel.

### II. Second cause of action: Violation of Consumer Protection Act (CPA)

45. Tribrach realleges and incorporates by reference each and every preceding paragraph.

46. Each of the acts and omissions described herein were committed in the course of trade and commerce.

47. Endurance's acts and omissions pled herein are per se unfair and deceptive acts or practices pursuant to the Washington Consumer Protection Act,

COMPLAINT - 10

576650-0002/4865-8839-8899.5

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

and/or had the capacity to deceive.

48. Each of Endurance's acts or omissions described herein impacts the public interest.

49. Endurance's acts or omissions described herein have caused injury and/or damage to Tribrach's business.

50. Tribrach is entitled to recover treble damages up to the statutory maximum for each violation.

### III. Third Cause of Action: Violation of the Insurance Fair Conduct Act (IFCA)

51. Tribrach realleges and incorporates by reference each and every preceding paragraph.

52. Endurance is liable under IFCA for, among other things: failing to conduct a reasonable investigation into Tribrach's claim under the Policies; compelling Tribrach to initiate litigation to recover amounts due to it under the Policies; failing to reasonably connect the Policies' language, on which the denial relies, to controlling law and the facts of Tribrach's claim; and unreasonably denying Tribrach's claim and all policy benefits.

53. Endurance's acts and omissions in violation of IFCA have proximately and directly caused and continue to cause Tribrach to suffer damages in an amount to be proven at trial, but not less than $1,075,000.

54. In addition, Tribrach is entitled to recover its actual damages, attorney fees, litigation costs, and expert witness fees pursuant to RCW 48.30.015(3).

55. Finally, this Court may award up to three times Tribrach's actual damages pursuant to RCW 48.30.015(3).

### IV. Fourth Cause of action: Bad faith

56. Tribrach realleges and incorporates by reference each and every

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

1 preceding paragraph.

2  57. Endurance's actions and inactions as described herein were unreasonable, frivolous and/or unfounded and therefore, constitute bad faith. Endurance's bad faith has directly and proximately damaged Tribrach in an amount to be proven at trial, but not less than $1,075,000.

### V. Fifth cause of action: Negligence

58. Tribrach realleges and incorporates by reference each and every preceding paragraph.

59. Endurance owed a duty to Barcelo to act reasonably and breached this duty by, at a minimum, failing to reasonably investigate Barcelo's claim, failing to reasonably defend or attempt to settle the claims made against Barcelo, and/or failing to provide a reasonable justification of Endurance's coverage position regarding the Tribrach action. As a result, and pursuant to *First State Ins. Co. v. Kemper*, 94 Wn. App. 602 (1999), Tribrach asserts an independent negligence cause of action and is entitled to seek damages in an amount to be proven at trial in excess of $1,075,000.

### Prayer for Relief

WHEREFORE, Tribrach prays for the following relief:

1. For damages in an amount to be proven at trial, but not less than $1,075,000;

2. For an award of attorney's fees, expert costs, and other costs incurred;

3. For treble damages under the Consumer Protection Act and under the Insurance Fair Conduct Act;

4. For coverage by estoppel; and

5. For such other and further relief as the Court deems just and

COMPLAINT - 12

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

576650-0002/4865-8839-8899.5

1 | equitable.

DATED this 22nd day of September, 2022.

*/s/ Tristan Swanson*
Tristan N. Swanson, WSBA No. 41934
Donald B. Scaramastra, WSBA No. 21416
MILLER NASH LLP
Pier 70, 2801 Alaskan Way, Suite 300
Seattle, WA 98121-1128
Tel:  (206) 624-8300
Fax:  (206) 340-9599
Email: tristan.swanson@millernash.com
Email: don.scaramastra@millernash.com

Attorneys for Plaintiff

COMPLAINT - 13

576650-0002/4865-8839-8899.5

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599